## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ANTONIO HALL, Inmate #B59852,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO.  04-108-GPM** |
| | ) | |
| **GEORGE RYAN, JIM RYAN, MARTIN** | ) | |
| **GREEN, DONALD N. SNYDER, JUDIE** | ) | |
| **EGELHOFF, MS. JOKISCH, MR.** | ) | |
| **MORGANTATE, SHEILA M. LOVE,** | ) | |
| **MELODY J. FORD, ROBERT L.** | ) | |
| **ROBMACHER, KAYANN FAIRLESS** | ) | |
| **MUELLER, CHRIS MITCHELL, PEGGY** | ) | |
| **TOLLIVER, MS. HEMPEN, MS. BRYANT,** | ) | |
| **MR. SUTTON, MR. WEIDERMEYER, D.** | ) | |
| **VOLKMAN, TRAVIS HICKS, DEAN** | ) | |
| **BLADES, WILBER GENE PURSELL, TY** | ) | |
| **MURRAY, M. NOLEN, ELAINE GRIFFIN,** | ) | |
| **B.D. LERCKS, JOHN WIBER, J.** | ) | |
| **McELYEA, RENATTA HILL, MR.** | ) | |
| **STEVENSON, MR. NEAL, MR. WILSON,** | ) | |
| **P. DeMIT, MARY DOEN, KRIS** | ) | |
| **GREMMELS, MR. HOFFMAN, MR.** | ) | |
| **CORBIT, MR. TOWNSEY, MR. GREEN,** | ) | |
| **MR. HANEY, FEDERRICO FERNANDER,** | ) | |
| **MS. WILLIAMS, JoLEEN BROCK,** | ) | |
| **ROBERT DAVENPORT, THOMAS A.** | ) | |
| **SPILLER, SHERI L. JONES, VINCENT** | ) | |
| **BARCISZEWSKI, MR. SNYDER, MS.** | ) | |
| **HALL, MR. WALLS, MR. BELTZ, J.** | ) | |
| **MANHANGT, N. SCRO, MR. CHEEKS,** | ) | |
| **MR. HALL, JOHN DOE, and GUY** | ) | |
| **PIERCE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, Chief District Judge:**

Plaintiff, a former inmate in the Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Plaintiff divides his complaint into approximately 80 counts. Many of the counts show similar violations at different times. As such, the Court will discuss the alleged constitutional violations in the complaint by subject matter. The Court finds that the following counts adequately represent Plaintiff's claims.

COUNT 1:    Against Pinckneyville Correctional Center officials for violation of his due process rights in disciplinary proceedings.

COUNT 2:    Against Defendants Barciszewski, Blades, DeMit, Doen, Fernander, Ford, Martin Green, Gremmels, Griffin, Hicks, Lercks, Love, Morgantate, Mueller, Murray, Nolen, Pierce, Pursell, Jim Ryan, George Ryan, Donald Snyder, Tolliver, Weidermeyer, and Wiber for violations of his due process rights in processing his grievances.

COUNT 3:    Against unspecified clinical services officials for not granting him a lower security classification.

COUNT 4:    Against Defendants Neal, Williams, Hall, Brock, Corbit, and Manhangt for verbal harassment in violation of the Eighth Amendment.

COUNT 5:    Against unit correctional officers for refusing Plaintiff's requests for ice.

COUNT 6:    Against unspecified prison officials for requiring him to handle hazardous

equipment on his work assignment.

**COUNT 7:**   Against Defendant Scro and other unit correctional officers for denying recreation time.

**COUNT 8:**   Against unspecified dietary supervisors for constitutional violations involving the foods served at Pinckneyville.

**COUNT 9:**   Against unspecified prison officials for denying Plaintiff privileges while his unit was on lockdown.

**COUNT 10:**   Against Defendants Spiller, Green, and other unspecified prison officials for failing to timely launder his clothing and blankets.

**COUNT 11:**   Against unspecified unit correctional officers for refusing to allow Plaintiff to attend his college classes.

**COUNT 12:**   Against Defendant Sutton and other unspecified prison officials for denying him access to gifts from charity organizations.

**COUNT 13:**   Against Defendants Pierce and Mitchell for exposing him to the HIV virus.

**COUNT 14:**   Against Defendant Pierce and other unspecified prison officials for delay in receiving his mail and for opening his legal mail.

**COUNT 15:**   Against Defendants Hall, Manhangt, Pierce, and other unspecified prison officials  for violations of the Equal Protection Clause of the Fourteenth Amendment.

**COUNT 16:**   Against Defendants Brock, Doen, Murray, Pierce, Hall, Haney, M. Snyder, Beltz, Townsey, McElyea, and Donald Snyder for unconstitutional retaliation.

**COUNT 17:**   Against Pinckneyville officials for denying him access to the law library.

This case is now before the Court for a preliminary review of the complaint pursuant to

28 U.S.C. § 1915A, which provides:

(a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims

or dismiss the complaint, or any portion of the complaint, if the complaint–
>    (1) is frivolous, malicious, or fails to state a claim on which relief
>    may be granted; or
>    (2) seeks monetary relief from a defendant who is immune from such
>    relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and, thus, subject to summary dismissal.

## COUNT 1

Plaintiff states that he was denied due process in three disciplinary proceedings.  In the first, he was found guilty of stealing a food tray and was required to pay $3 for the food (1).[1]  In the second, Plaintiff was found guilty of leaving a dirty shirt on the floor of his cell (2).  As punishment, he was given a verbal reprimand.  In the third, Plaintiff was found guilty of refusing to carry a large number of food trays on his job and was denied commissary for one month (5, 7).  In his complaint, Plaintiff details how due process was denied in each of the proceedings.

To state a claim of denial of due process in a disciplinary matter, a Plaintiff must show that he was deprived of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Until Plaintiff has shown that he was denied one of these protected interests, the Court will not go on to consider the process he received. In the first proceeding, Plaintiff was required to pay for the stolen food.  In the second, Plaintiff received a verbal reprimand, and in the third, he was denied commissary privileges.  These

---

[1]The numbers in parentheses throughout this Memorandum and Order indicate the counts of Plaintiff's complaint where the allegations can be found.

punishments do not implicate a liberty or property interest under the due process clause. *See, e.g., Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). Without allegations of such an interest, Plaintiff has failed to state a claim of constitutional dimension. Accordingly, Count 1 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

### COUNT 2

In each count of the complaint (as numbered by Plaintiff), Plaintiff states his claim in terms of the denied or ignored grievance that he filed. Specifically, he states that the following Defendants denied without investigation or did not respond to his grievances or letters requesting investigation into his treatment at Pinckneyville Correctional Center: Barciszewski, Blades, DeMit, Doen, Fernander, Ford, Martin Green, Gremmels, Griffin, Hicks, Lercks, Love, Morgantate, Mueller, Murray, Nolen, Pierce, Pursell, Jim Ryan, George Ryan, Donald Snyder, Tolliver, Weidermeyer, and Wiber.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Based on these legal standards, Plaintiff has failed to state a claim against any of the defendants who allegedly did not properly investigate or who denied or ignored grievances and requests for investigations. Accordingly, Count 2 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 3

Plaintiff states that unspecified defendants in Clinical Services at Pinckneyville Correctional Center did not provide him the procedures to which he was entitled to lower his security classification while in the custody of the Illinois Department of Corrections (4).

Classifications of inmates implicate neither liberty nor property interests. *See Sandin v. Conner*, 515 U.S. 472 (1995); *Meachum v. Fano*, 427 U.S. 215 (1976). Therefore, Plaintiff has no constitutional right to a particular security classification. *Moody v. Daggett*, 429 U.S. 78, 88 & n.9 (1976). If the state elected to recognize such a right, then he would have an enforceable claim under the Fourteenth Amendment. *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir.1991). However, Plaintiff does not allege that the state has created a right to a particular security classification, and the Court is not aware of any such right. Based on these legal standards and Plaintiff's allegations, Count 3 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 4

Plaintiff lists a number of allegations involving guards shouting at or using threatening or insulting language toward him in an effort to harass or intimidate. On September 15, 2000, Defendant Neal shouted at Plaintiff, complaining about how he did his job in the kitchen (3). On December 7, 2000, Defendant Williams yelled at Plaintiff when he misplaced the "season salt" (5). On another date in December 2000, Defendant Brock shouted at Plaintiff on the job, stating "Hall get off your [expletive] and get back here" (5). On May 2, 2001, Defendant Ms. Hall stated that Plaintiff and other inmates on his wing "act just like girls, females, crying like babies" (16). Some of the harassing statements had a racial component. On May 10, 2001, Defendant Hall joked about black inmates' hair, saying that it looked like James Brown and that it looked "crazy like in the

1960s" (17).  On May 21, 2001, Defendant Corbit told Plaintiff, "hurry your [expletive] up and get that [expletive] off your bed before I come in your cell and beat your black [expletive]."  Later the same day, Defendant Corbit said to Plaintiff, "see how easy it would be for us to beat your black [expletive]?" (25).  Plaintiff states that on June 17, 2001, inmates were allowed to watch the movie "O Brother, Where Art Thou" on television but that the movie contained language disrespectful to black inmates (37).  Finally, Plaintiff states that on September 25, 2001, Defendant Manhangt refused to allow Plaintiff to use the restroom in the school building, stating "boy, get back to your class."  Plaintiff believed Defendant Manhangt used the term "boy" in a racially derogatory manner.

Isolated, infrequent incidents of verbal abuse do not give rise to an Eighth Amendment claim.  *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992).

> The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.  *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *accord Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), *clarified on rehearing*, 186 F.3d 633 (5th Cir. 1999).  Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.  *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton*, 822 F.2d at 700 (due process); *Williams*, 180 F.3d at 705-06 (equal protection).

*DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).  Based on these standards, Plaintiff's allegations of isolated incidents of abusive and harassing language do not state a claim of constitutional dimension.  Accordingly, Count 4 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 5

Plaintiff states that on the following dates in 2001 correctional officers on his unit did not provide him with ice, even though the temperature in his cell was over 80 degrees:  January 17 (8), April 28 (12), May 16-23 (26), July 8 (41), July 12-16 (42), and September 11 (52).  On June 20, 2001, he received ice, but it was dirty and contained rainwater and bugs that had fallen into it because the transporting officer had not put a lid on the ice container (35).

The Court knows of no constitutional principle requiring that inmates be given ice on hot days.  Accordingly, the Court will analyze the claims under the Eighth Amendment's prohibition against cruel and unusual punishment.  Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety.  *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992).  In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims.  *See McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment.  *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).  The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).  The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities.  *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also satisfy a subjective component; he must show that a prison official had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 298; *McNeil*, 16 F.3d at 124.  In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough to state such a claim. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

The circumstances presented do not rise to the level of an Eighth Amendment violation. Plaintiff is reminded that "[i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988).  Plaintiff has not shown how the denial of ice on a few days rendered his confinement ***constitutionally*** inadequate. Accordingly, Count 5 is **DISMISSED with prejudice** from the action.  *See* 28 U.S.C. § 1915A.

## COUNT 6

Plaintiff states that on April 1, 2001, unspecified defendants required him to handle hazardous equipment on his job (9).  Although Plaintiff was worried that he might be injured while

handling the hazardous equipment, he has not alleged any physical injury.  Therefore, he has failed

to state a claim.  *See* 42 U.S.C. § 1997e(e).  Count 6 is **DISMISSED with prejudice** from this

action.  *See* 28 U.S.C. § 1915A.

### COUNT 7

Plaintiff states that on the following days in 2001 correctional officers on his unit denied him

recreation time and provided no substitute recreation period:  April 21 (10), May 11 (18), and May

14 (21).  Between August 20 and September 15, 2001, Defendant Scro denied Plaintiff recreation

time because of his work schedule (56).

The Seventh Circuit Court of Appeals has recognized that denial of opportunity for exercise

may rise to the level of a constitutional violation.  *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th

Cir. 2001).  However, "short-term denials of exercise may be inevitable in the prison context and

are not so detrimental as to constitute a constitutional deprivation."  *Id.* at 683-84; *see also Ramos*,

130 F.3d at 764 (70-day denial did not amount to constitutional deprivation); *Harris v. Fleming*, 839

F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not a constitutional deprivation).  Here, Plaintiff has

alleged that he was deprived of recreation on three isolated occasions, and then for 26 days, due to

his work schedule.  Based on the legal standards described above, Plaintiff has failed to state a

viable constitutional claim on these facts.  Accordingly, Count 7 is **DISMISSED with prejudice**

from the action.  *See* 28 U.S.C. § 1915A.

### COUNT 8

Plaintiff makes a number of allegations regarding the food at Pinckneyville.  On April 5,

2001, inmates were served spoiled milk, but staff received fresh juices, ice cream, and potato chips

(11).  These items were not offered to inmates.  On May 1, 2001, while Plaintiff's unit was on

lockdown, food was transported from the kitchen to the unit in unsanitary carts and was served to inmates through dirty chuck hole doors (13, 14).  On May 2, 2001, inmates on lockdown received cold food and were given no beverages, while inmates in other units and staff received hot food and juice (15).  On May 18, 2001, coffee was not given to inmates on lockdown (24).  Between May 16 and 23,  and July 12 and 16, 2001, the food served to inmates on lockdown was transported with hot and cold foods in the same compartment and not isolated by temperature (27, 43).  On June 20, 2001, inmates were served sugar free jelly made with saccharin.  Plaintiff considered the jelly "poisonous" (36).  Between August 10 and September 10, 2001, there were too many flies in the dining hall (46).  Between September 12 and 17, 2001, inmates were again served food that had been transported to the unit with hot and cold foods together in unsanitary carts, and the meals were served through the unsanitary chuck hole door (53, 54).  Finally, on October 31, 2001, the dining hall menu indicated that garlic bread would be served.  When Plaintiff received his tray there was no garlic bread, only a plain roll (62).

Claims regarding inadequate food and meals are analyzed under the Eighth Amendment's cruel and unusual punishment clause.  As stated in Count 5 above, a plaintiff must show that he was deprived of a basic human need or of the minimal civilized measures of life's necessities – the objective component – and that the actors depriving him acted with deliberate indifference to inmate health or safety – the subjective component. *See McNeil*, 16 F.3d at 124.  The deprivations alleged by Plaintiff here are not sufficiently serious and do not show conditions exceeding the "contemporary bounds of decency of a mature civilized society." *See Lunsford*, 17 F.3d at 1579. The Court knows of no independent constitutional right to garlic bread, hot food, coffee, foods containing sugar instead of saccharin, or the separation of hot food and cold food during transport

from the kitchen.  On these allegations, Plaintiff has failed to state a constitutional claim.

The allegations regarding food transported in dirty carts and then served through dirty chuck holes and the serving of spoiled milk might state serious deprivations, but here Plaintiff has not satisfied the subjective component of the analysis; he has not shown how the actors responsible acted with deliberate indifference.  At best, Plaintiff has stated a claim of negligence.

> [N]either negligence nor strict liability is the appropriate inquiry in prison-conditions cases. . . . [P]risoners who contest the conditions of their confinement under the eighth amendment must establish that their custodians either established the conditions to inflict wanton pain or are deliberately indifferent to whether the conditions have these effects.  The eighth amendment is concerned with "punishment", and … showing a culpable mental state is essential in establishing that conditions of confinement are part of the "punishment".

*Steading v. Thompson*, 941 F.2d 498, 499-500 (7th Cir. 1991), *citing Wilson v. Seiter*, 501 U.S. 294 (1991).  Accordingly, Plaintiff has not stated a claim on these facts; Count 8 is **DISMISSED with prejudice** from the action.  See 28 U.S.C. § 1915A.

### COUNT 9

Plaintiff states that on June 22, 2001, his unit was put on lockdown, while other units in the prison were not, causing him to be deprived of unspecified privileges (38).  On July 1, 2001, his unit was on lockdown, but certain inmates were allowed to leave the unit to go to their work assignments, while other inmates, including Plaintiff, were not allowed to leave their cells (41).

Prisoners have no liberty interest in movement outside of their cells.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  As such, Plaintiff has failed to state a claim on these facts; Count 9 is **DISMISSED with prejudice** from the action.  *See* 28 U.S.C. § 1915A.

## COUNT 10

Between August 27 and 30, 2001, Plaintiff's dirty clothes were not picked up for laundering, "leaving Plaintiff's clothes and living environment unsanitized" (50). For two months prior to August 16, 2001, Defendants Spiller and Green would not allow Plaintiff to put his blankets in the laundry (76, 77).

The Court finds that four days without a laundry pick up and a two-month period in which an inmate's blankets were not washed are not deprivations of the minimal civilized measures of life's necessities as contemplated under the Eighth Amendment. As such, Count 10 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 11

Plaintiff states that on September 17, 2001, an unspecified unit correctional officer announced that college classes were cancelled and refused to allow Plaintiff to leave the unit to go to the school building for his class (78). It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982). Consequently, Plaintiff has no valid constitutional claim; Count 11 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 12

On November 6, 2001, Plaintiff was not allowed "Angel Tree" forms from a prison ministry so he could request holiday gifts be sent to his family and he was denied "goodies" that had been donated for distribution to inmates (79). The Court is unaware of any constitutional right to gifts

from charity organizations, and Plaintiff has not shown any entitlement to such gifts.  Accordingly, Plaintiff has failed to state a claim on these facts; Count 12 is **DISMISSED with prejudice** from the action.  *See* 28 U.S.C. § 1915A.

**COUNT 13**

Plaintiff states that in September 2001 Defendants Pierce and Mitchell placed him in danger by allowing an HIV-positive inmate with open, bleeding sores into the day room, thereby exposing Plaintiff to the disease (54).  Plaintiff does not allege that he has suffered any harm as the result of his physical proximity to the HIV-positive inmate.  Although he expresses concern over exposure to the disease, he has not alleged any physical injury.  Therefore, he has failed to state a claim upon which relief may be granted, *see* 42 U.S.C. § 1997e(e), and Count 13 is **DISMISSED with prejudice** from this action.  *See* 28 U.S.C. § 1915A.

**COUNT 14**

Plaintiff makes several allegations about his mail.  Plaintiff states that between August 27 and 30, 2001, he had difficulty receiving his personal mail because an unspecified unit officer allowed other inmates to distribute mail (50).  On September 18, 2001, an unspecified mailroom supervisor opened, outside of Plaintiff's presence, a letter from the Illinois Secretary of State that contained a legal document (55).  Plaintiff includes a copy of the envelope with the complaint.  Written on the outside of the envelope:  "opened in error–contents not read."  On October 30, 2001, Defendant Pierce and an unspecified mailroom supervisor opened and read Plaintiff's outgoing legal mail and returned the letters to him without mailing (60, 61).

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576,

Page 14 of  24

> 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Rowe*, 196 F.3d at 782.  An
> inmate's legal mail, however, is entitled to greater protections
> because of the potential for interference with his right of access to the
> courts.  *Rowe*, 196 F.3d at 782.  Thus, when a prison receives a letter
> for an inmate that is marked with an attorney's name and a warning
> that the letter is legal mail, officials potentially violate the inmate's
> rights if they open the letter outside of the inmate's presence.  *See
> Wolff*, 418 U.S. at 577, 94 S. Ct. 2963; *Castillo v. Cook County Mail
> Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).  However, the inadvertent or

negligent opening of an occasional legal letter is not actionable.  *See, e.g., Bryant v. Winston*, 750

F. Supp. 733 (E.D. Va. 1990); *Bruscino v. Carlson*, 654 F. Supp. 609, 618 (S.D. Ill. 1987) ("isolated

incidents of interference with legal mail" may not state a constitutional violation without a showing

of "a systematic pattern or practice of interference").  Thus, Plaintiff's allegations regarding the

short-term delay in mail and the inadvertent opening of a letter from the Illinois Secretary of State

are not sufficient to state a claim based on these legal standards.

However, the allegations that his outgoing legal mail was opened, read, and returned to him

without mailing presents a more serious potential constitutional violation.

> Inmates have a First Amendment right both to send and receive mail,
> *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does
> not preclude prison officials from examining mail to ensure that it
> does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576,
> 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Rowe*, 196 F.3d at 782.

*McCaughtry*, 419 F.3d at 685.  Courts have consistently held that searches of prisoners' outgoing

mail is permissible for security purposes, such as searching for contraband, escape plans, and the

like.  *See Rowe*, 196 F.3d at 782 ("prison security is 'a sufficiently important governmental interest

to justify limitations on a prisoner's first amendment rights'"); *Gaines v. Lane*, 790 F.2d 1299, 1304

(7th Cir. 1986) ("provisions of this type do not impermissibly intrude on first amendment rights");

*Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977).  But outgoing ***legal*** mail is subject to "greater constitutional protection because of the lesser security concerns presented."  *Davis v. Goord*, 320 F.3d 346, 352 (2nd Cir. 2003).  Thus, Plaintiff's allegations regarding the return of his outgoing legal mail (at Plaintiff's counts 60 and 61) do state a valid constitutional claim that cannot be dismissed at this point in the litigation.  Accordingly, Plaintiff may proceed on this claim.  A problem arises, however, in that Plaintiff has not stated with specificity the name of one of the individuals responsible for opening, reading, and returning to him his outgoing legal mail. ***Plaintiff will not be allowed to proceed on this claim against said individual until he has identified this individual by name on a USM-285 form and in an amended complaint filed in accordance with the Federal Rules of Civil Procedure and the Court's local rules.***

### COUNT 15

Plaintiff states a number of actions by prison officials that Plaintiff believes constitute racial discrimination.  On May 2, 2001, Defendant Hall ordered Plaintiff to put on a shirt while allowing Hispanic and white inmates to go shirtless inside their cells (16).  On September 25, 2001, Defendant Manhangt refused to allow Plaintiff to use the restroom in the school building and was told "boy, get back to your class."  Plaintiff states that white inmates were allowed to use the restroom (57).  A grievance submitted with the complaint shows, however, that Plaintiff was not allowed to use the restroom because he did not have a hall pass.  On October 17, 2001, Defendant Pierce promulgated a new prison rule directing that inmates could no longer wear their hair in braids (83).  Finally, Plaintiff states that the prison commissary exclusively sells combs that work only on thin, "European" hair and does not provide combs more appropriate for black inmates' hair (58).

To state an equal protection claim, a plaintiff must show not only different treatment than

others of a different race, but also that the defendants acted with discriminatory intent. *See Sims v. Mulcahy*, 902 F.2d 524, 539 (7th Cir. 1990).

> "'Discriminatory purpose' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Administrator of Massachusetts v. Feeny*, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979). It implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group. *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982).

*David K. v. Lane*, 839 F.2d 1265, 1271-72 (7th Cir. 1988). Based on these standards, Plaintiff has failed to state an equal protection claim on any of these allegations because he cannot make the requisite showing of discriminatory intent by Defendants in ordering Plaintiff to wear a shirt, in making him return to class when he did not possess a hall pass, or in not selling the Plaintiff's preferred comb in the commissary. As to the regulation that inmates could not wear their hair in braids, Plaintiff has not shown that he wears braids, that he was told he could no longer wear them, or that he suffered any other injury as a result of that regulation. As such, Count 15 is **DISMISSED with prejudice** from the action. *See* 28 U.S.C. § 1915A.

## COUNT 16

Plaintiff states that he has been retaliated against by a vast number of defendants for filing prison grievances. Plaintiff alleges that all of the following actions were taken in retaliation for his filing grievances. On December 30, 2000, Plaintiff refused to carry a number of stacked trays on his job in the prison kitchen for fear he would hurt himself while carrying them. Defendant Brock wrote a disciplinary ticket for refusal to carry the trays, and Defendants Doen, Murray, and Pierce punished Plaintiff with loss of commissary for one month for the violation (5, 7). Also during December 2000, Plaintiff was not allowed to go to his prison job (5). On May 11, 2001, Defendant

Hall denied Plaintiff's request to see a doctor for a medical emergency and then told Plaintiff that if he filed a grievance about it, she would write him a disciplinary ticket (19).  On May 14, 2001, Defendant Hall opened Plaintiff's cell door while he was using the toilet and left the door open so other inmates could see in (20).  On May 16, 2001, Defendant Haney yelled at Plaintiff, telling him to stop filing grievances and later made Plaintiff lock up 45 minutes before other inmates on his unit (22).  Between May 16 and 23, 2001, Plaintiff was denied ice (26).  On May 30, 2001, Defendant Haney solicited another inmate to ask Plaintiff to stop filing grievances (28).  Between May 6 and June 1, 2001, Plaintiff was shaken down daily by Defendants Hall and Haney (31).  On June 13, 2001, Defendant Hall shouted in Plaintiff's face, threatening to send him to segregation if he didn't stop filing grievances (32).  Defendant M. Snyder also told Plaintiff he could not wear to the chow hall the shirt he was wearing (32).  On June 23, 2001, Defendant Townsey made Plaintiff leave the chow hall line without eating because he was wearing a commissary-purchased shirt, but other inmates wearing the same shirt were allowed to eat (39).  On July 8, 2001, Ms. Hall shook down Plaintiff's cell and then refused to put Plaintiff's property back in his property boxes (40).  Between July 12 and 16, 2001, Defendants Hall and Beltz denied ice to Plaintiff's entire unit (42).  Between July 20 and August 10, 2001, Plaintiff was denied grievance forms (47).  On August 16, 2001, Plaintiff was fearful of Defendant Townsey's retaliation (48).  On August 18, 2001, Defendants Ms. Hall and M. Snyder shook down Plaintiff and did not return his property to his property boxes (49).  Between August 27 and 30, and on September 30, 2001, Plaintiff's unit was locked down 30 minutes early (50).  On September 13, 2001, Defendant Townsey denied Plaintiff's request for new boots for working in the shower room where he was exposed to harmful chemicals (51).  On September 11, 2001, Plaintiff was denied ice (52).  On September 13, 2001, Plaintiff was forced to put his

religious necklace under his shirt (53), and on October 10, 2001, he was not allowed to wear it at all (59).  On October 31, 2001, Defendant McElyea slapped Plaintiff on the back repeatedly and yelled at him (63).  On December 3, 2001, Defendants Pierce, Snyder, and the unspecified transfer coordinator raised Plaintiff's security level so he would be moved to a different facility, causing him to lose privileges (64, 66, 67).

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d 607; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*

Based on these legal standards, Plaintiff's retaliation claims against Defendants Brock, Doen, Murray, Pierce, Hall, Haney, M. Snyder, Beltz, Townsey, McElyea, Donald Snyder, and the unspecified transfer coordinator cannot be dismissed at this point in the litigation.

## COUNT 17

Plaintiff states that he was denied access to courts on the following occasions.  On May 18, 2001, he was not allowed to go to the law library while his unit was on lockdown despite a court deadline.  No library staff came to the unit to assist inmates.  However, 25 inmates were allowed to leave the unit to go to their work assignments (23).  On May 16, 2001, Plaintiff was denied access to the law library, and no paralegals came to the unit to assist inmates (34).  In general, Plaintiff was allowed to go to the law library only 1.5 hours each week, despite numerous requests (34).  On July

7, 2001, Plaintiff was not allowed to go to the law library during a lockdown, and no paralegals came to his cell (44).  On January 7, 2000, Plaintiff was not allowed to go to the law library despite a court deadline (74).

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts.  *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992).  First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Jenkins*, 977 F.2d at 268, *quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977).  Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation."  *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins*, 977 F.2d at 268; *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 n.2 (7th Cir. 1987).  That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation.  It does not mean that any delay is a detriment.  *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992).  Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation.  *Kincaid*, 969 F.2d at 603.  An inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded.  *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).  Based on these legal standards, Plaintiff has failed to state a claim that he was denied access to courts because he has not shown "actual substantial prejudice to specific litigation."  Accordingly, Count 17 is **DISMISSED with prejudice** from the action.  *See* 28 U.S.C. § 1915A.

### SUMMARY

Plaintiff may proceed against Defendant Pierce and the unspecified mailroom supervisor on the portion of Count 14 involving the return of his outgoing legal mail (at 60 and 61 of Plaintiff's complaint).  Plaintiff may also proceed against Defendants Brock, Doen, Murray, Pierce, Hall, M. Snyder, Beltz, Townsey, McElyea, Donald Snyder, and the unspecified transfer coordinator on Count 16 of the complaint.  All other claims and defendants are **DISMISSED** from the action.

**IT IS HEREBY ORDERED** that Plaintiff shall complete and submit a USM-285 form *specifying the names* of the unspecified mailroom supervisor and the unspecified transfer coordinator within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.  The Clerk of Court is **DIRECTED** to send Plaintiff **two (2)** USM-285 forms with Plaintiff's copy of this Memorandum and Order.  **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for ***Defendants Brock, Doen, Murray, Pierce, Hall, M. Snyder, Beltz, Townsey, McElyea, and Donald Snyder***.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Brock, Doen, Murray, Pierce, Hall, M. Snyder, Beltz, Townsey, McElyea, and Donald Snyder*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable Forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time

under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. ***Service shall not be made on the unspecified defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended complaint.*** Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of the Illinois Department of Corrections (IDOC) who no longer can be found at the work address provided by Plaintiff, IDOC shall furnish the Marshal with the Defendant's last-known address upon issuance of a Court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise), and any documentation of the address shall be retained only by the Marshal. Address information obtained from IDOC pursuant to such order shall not be maintained in the Court file nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service, as well as any requests for waivers of service that are returned as undelivered, as soon as they are received. If a waiver of service is not returned by a Defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk of Court prepare a summons for that Defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Memorandum and Order upon that Defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for that Defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said Defendant. Said costs shall be enumerated on the USM-285

form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally-served Defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless said Defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to Defendants or their counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule of the United States District Court for the Southern District of Illinois 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pretrial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to do so will result in dismissal of the

action pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

DATED: 10/12/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge